# WILLEY v. STORMONT.

VENDOR AND PURCHASER; EQUITY; REAL ESTATE BROKERS; AMENDMENT; EXCHANGE OF LANDS.

1. Testimony by the grantor that he executed deeds without reading them is entitled to no weight, where he had the opportunity to do so.
2. D., the owner of land, approved a contract for the exchange of his land for land owned by S., on condition that the broker acting in the transaction should sell the land to be taken in exchange, within thirty days, for a specified price; and delivered to the broker a deed to S. of his, D's., land. S. delivered to the broker a deed of his land made out to D. D., executed and delivered to the broker a deed covering S's. land. D. notified the broker not to deliver the deed he had executed, but the broker having entered into a contract to sell to W., the land taken from S., for less than the price fixed by D., recorded all three deeds. S. had actual knowledge of the condition made by D. before the deeds were recorded. Thereafter D. conveyed to his sister the land embraced in his deed to S. In suits in equity to which D., his sister, S., and W. were parties, it was *held* that the broker exceeded his authority in entering into the contracts with S. and W.; that there was no legal delivery of the deeds to S. and W.; and that a decree should be passed restoring all of the parties to their original position, except that the sister of D., having acquired title from him, should be declared to be vested with such title.
3. A real estate broker is not entitled to an agreed commission upon a transaction or exchange not completed, whatever may be his right to recover for services actually performed.
4. In view of the principles of equity that a cause shall not be finally disposed of without having all of the parties whose interests might be affected before the court, leave to amend by making new parties is more liberally granted where the necessity therefor has not been suggested, and does not become manifest, before the final hearing.
5. Where, in suits growing out of the proposed exchange of lands, in which receivers had been appointed and had collected money paid by the parties to a broker in the transaction, less the broker's commission and possibly other money retained by him, it was found that deeds recorded by the broker, without authority, should be canceled; that the parties should be restored to their original position; and that the broker was not entitled to a commission, it was *held* that the

lower court should have granted leave asked by one of the parties, to amend his bill by making the broker a party, so that the final decree could dispose of the funds in the possession of the receivers, as well as the money which remained in the hands of the broker.

Nos. 2363 and 2364. Submitted February 8, 1912. Decided March 4, 1912.

HEARING on appeals from decrees of the Supreme Court of the District of Columbia sitting as an equity court, in two causes consolidated for hearing. *Reversed.*

The COURT in the opinion stated the facts as follows:

These are appeals from decrees after the consolidation of the two above entitled and numbered suits, sustaining the bill in No. 2363, and dismissing that in No. 2364.

The first bill, filed by George T. Stormont and wife, against George R. A. and Lizzie Lee Willey, alleged that about September 15, 1910, George T. Stormont was the owner of a lot and house known as No. 308 R St. N. E., worth about $3,500, and subject to a deed of trust for $1,400. That George R. A. Willey was then the owner of lot and improvements known as 1403 Delafield place, worth about $7,000, subject to a deed of trust for $3,500. That Stormont, on said date, entered into an agreement in writing with Willey, by which Willey, in consideration of the agreement of Stormont to convey to him his equity in said premises (No. 308 R St. N. E.); the payment of $1,400 in cash, and the assumption of the encumbrance of $3,500 on the premises 1403 Delafield place, agreed to convey said premises to Stormont.

That, on October 6, 1910, Stormont executed and delivered to Willey the conveyance of his equitable estate in No. 308 R St. N. E., and paid the said sum of $1,400 in cash. That Willey accepted the same, and on October 15, 1910, sold and conveyed the said premises to one Richard A. Washington, which conveyance has since been recorded.

That, on the same day, Willey executed and delivered to said Stormont a deed conveying said premises, No. 1403 Dela-

field place, subject to the said encumbrance of $3,500, which said deed was accepted and recorded. That afterwards, to wit, on October 20, 1910, said Willey, intending to wrong and defraud Stormont, conspired and colluded with his sister and codefendant, Lizzie Lee Willey, and made a deed to her for said premises, No. 1403 Delafield place, and caused the same to be recorded. That said deed was without notice to Stormont, was without consideration, and the said grantee then knew that her grantor had previously conveyed the same to Stormont. That the said premises are of the rental value of $45 per month, and Stormont has brought an action of ejectment against said Lizzie Lee Willey to recover possession of the premises and damages. That said defendant is not the owner of any property out of which a judgment for damages can be collected, and the said deed is a cloud upon Stormont's title.

The prayers are that a receiver be appointed to take possession of the said premises, and that the said conveyance from George R. A. Willey to Lizzie Lee Willey be declared to be fraudulent and void, and canceled. The contract alleged in the bill was attached as an exhibit thereto, and reads as follows:

Washington, D. C.,
$200.                                          Sept. 15, 1910.

Received of George T. Stormont a check of two hundred dollars ($200) to be applied as part payment in the purchase of lot 19, in square 2709, with improvements thereon, known as 1403 Delafield street, Northwest, in the county of Washington, District of Columbia. The purchaser is required to make full settlement in accordance with the terms of sale within thirty days from this date, or the deposit, at the option of the seller, will be forfeited. Terms of sale: Purchaser to assume an existing deed of trust of thirty-five hundred dollars ($3,500) and for the equity, agrees to convey to such a party as Stone & Fairfax may direct, lot 27, square 3574, improved by dwellings 308 R St. Northeast, subject to an encumbrance of fourteen hundred dollars ($1,400), and pay a cash difference of ($1,400). Property sold free of encumbrance excepting afore-

said trusts. Title to be good title, or deposit refunded and sale declared off.

Interest on trusts, rents, insurance, and taxes to be adjusted to date of transfer. Any special assessment now or hereafter levied by District of Columbia officials against said property, for improvements or work completed prior to date of this contract, shall be paid by the present owner, when bill is rendered.

Examination of title and cost of conveyancing at the cost of purchaser.

The forfeiture of deposit does not relieve the purchaser of the responsibility to comply with the terms of sale.

This contract is made subject to approval by the owner, which approval is to be made within twenty-four hours from date, of contract not be binding on either party.

(Signed)    Stone & Fairfax, Agents.
By R. L. Hall.

Accepted by George T. Stormont, Purchaser.
Approved September 15, 1910.
Stone & Fairfax,
By R. L. Hall.

The answer of defendant George R. A. Willey denied entering into the contract alleged in the bill (Exhibit A). He denied that he delivered the deed set out in the bill to the plaintiff, or that the same was delivered by his authority, and that he received or had tendered to him the $1,400 in cash as alleged. That Stone & Fairfax, and their employees, urged him to sign the two deeds (to plaintiff and to Washington), and threatened him with a cost of $800 unless he did so, and with a suit. That disturbed and alarmed by these threats, he signed the deeds at the office of Stone & Fairfax, but was shown no statement, offered no money, given no explanation why two deeds were required, and did not understand the transaction. Later he retained counsel, who visited Stone & Fairfax, and was informed that defendant would receive about $640. That on the next day, October 20, 1910, defendant conveyed the premises, 1403 Delafield place, to his codefend-

ant.   That Stone & Fairfax were informed of this conveyance, and notified not to deliver the deeds made by defendant, and then in their possession.   That defendant had no desire to sell said 1403 Delafield place, but was frequently urged by R. L. Hall, an employee of Stone & Fairfax, to do so.   On September 15, 1910, defendant was informed that he could sell his equity in said premises for $1,400 in cash, and an equity in 308 R St. N. E., which said equity could be sold for $2,500 cash within thirty days, and defendant would not be bound unless said equity was sold for $2,500 in cash within that period.   And defendant was informed that, the purchaser of his premises assuming the $3,500 trust thereon, defendant would receive $2,310 out of the transaction.

The only paper signed by the defendant approving a sale was the following:

Washington, D. C., September 15, 1910.

The contract to sell my house, No. 1403 Delafield St. Northwest, taken in part payment for the equity in No. 308 R St. Northeast, and ($1,400) fourteen hundred dollars in cash, is hereby ratified.   I agree to convey the property according to the terms of a contract made with George T. Stormont, with the understanding that Stone & Fairfax are to dispose of house No. 308 R street, Northeast, for twenty-five hundred dollars ($2,500) equity in cash, inside of thirty days from this date. I further agree to pay Stone & Fairfax one hundred and eighty dollars commission.

George R. A. Willey,
1403 Delafield place, N. W.

That after signing the deeds under the circumstances before alleged, he discovered through his counsel that instead of getting the $2,500 for the equity in 308 R St. N. E., he would only receive that sum less an encumbrance of $1,400, and that instead of receiving $2,310 in cash, he would only receive about $640 in all.   That this was in violation of his agreement aforesaid.   That plaintiff had knowledge of the provisions

of said paper of September 15, 1910. That at the time of executing said deed to Richard Washington, he was told that the sale had been made pursuant to his said agreement. Defendant Lizzie Lee Willey answered, denying the allegations of the bill as to her. Replication was filed to these answers, and issue joined thereon. On November 22, 1910, Lizzie Lee Willey filed her bill against Stormont and wife, Richard A. Washington, and George R. A. Willey. She alleged that at the time of the purchase of 1403 Delafield place by her brother, she advanced him $504.75 to make the cash payment thereon, with the understanding and agreement that she should have an interest therein to that extent. The remainder of the allegations of the bill are substantially the same as contained in the answer of George R. A. Willey to the Stormont bill, as regards the ownership, agency, and conveyances of the several premises. It is further alleged that there is a deed on record from Stormont and wife conveying to George R. A. Willey the premises 308 R St. N. E., and in deed from said Willey to defendant Washington conveying the same upon a nominal consideration, which said deed the said Washington had no right to take and record, having notice by the paper of September 15, 1910, of the agreed price of the same. She alleges the conveyance of premises 1403 Delafield place to her in order to protect her interests and those of George R. A. Willey. She prays the cancelation of the deed from Willey to Stormont, and that of Willey to Washington. Certain interrogatories are propounded to defendant Washington, answer thereto under oath, stating that he, acting through his agent H. L. Rust, contracted for the purchase of 308 R St. N. E., on September 28, 1910, making a deposit of $100 cash, agreeing to pay $2,600, of which $1,400 consisted in the assumption of an encumbrance of that amount; the remainder, $1,260, to be paid in cash. That he paid the $100, and certain amounts to Stone & Fairfax on account of water rent, taxes, etc., but did not make final settlement until October 19, 1910, because of the inability of Stone & Fairfax to deliver the deed to said

premises. That he has not since conveyed the property, or entered into any contract concerning the same. That he has had no agreement with said Stormont concerning said property. He also demurred to the bill.

On December 22, 1910, the parties consenting thereto, the court entered a decree appointing receivers to take possession of both of the afore-described premises. Said receivers were authorized to receive and hold all moneys in the hands of Stone & Fairfax, received and held by them as the proceeds of said transactions. They were given power to execute a mortgage upon 1403 Delafield place to pay off the trust of $3,500 thereon, the holders of the same being unwilling to renew it. They were further empowered to lease said premises to Lizzie Lee Willey for $40 per month during the pendency of the suit, and hold the same subject to the final decree of the court. All payments and disbursements made out of the funds received from Stone & Fairfax to be made a lien on said premises subject to final decree. It was provided that the provisions of this order shall not operate as a waiver of any rights or defenses of any of the parties.

Testimony was taken in the case; the witnesses examined being George T. Stormont, Frederick E. Johnson, and Ralph L. Hall, clerks and employees of Stone & Fairfax, George C. Bowie, employee of Rust, the agent for Washington, George R. A. Willey, Lizzie Lee Willey, R. L. O'Brien, Irving Williamson, attorney for the Willeys, and N. L. Sansbury.

It appeared from a report of the receivers that they had rented 1403 Delafield place to Lizzie Lee Willey as directed, and received the payments therefor to date of report; that they had secured an extension of the $3,500 trust thereon, upon payment of a commission; that they had paid all costs and expenses, and had received from Stone & Fairfax the sum of $2,311.27, funds in their hands. A final decree was passed August 29, 1911, canceling the deed from George R. A. Willey to Lizzie Lee Willey, and disposing of the fund in the hands of the receivers.

A brief opinion filed by the learned trial justice indicates

that the decree was rendered on the ground that Stone & Fair-
fax were not made parties. It was said: "In this state of
affairs it appears to the court that the rights of the parties to
this case cannot be adjusted without leaving questions open be-
tween them and Stone & Fairfax, which seriously affect the
equities involved here. If the deed to Storment shall be set
aside, and Washington be required to give up his purchase
and convey to Stormont, that will indeed give Stormont his old
place, and leave Willey and his sister in control of the Willey
place. But how will Stormont and Washington, respectively,
stand with Stone & Fairfax? Can they get what they have
paid in? Will Stone & Fairfax assent to the decree and re-
linquish their claim to commissions? Whatever rights Willey
may have against Stone & Fairfax, he has put himself in such
relation to this matter by executing the various deeds that he
cannot throw upon Stormont and Washington the burden of
a litigation with Stone & Fairfax. Miss Willey stands in no
better position than her brother. The deed was executed to
her without her previous knowledge, and she had sufficient
notice, of the equities involved. It was the act of Willey him-
self, and done mainly in his own interest. The deed to her
should be set aside and her bill dismissed. Willey should be
left to settle his rights with Stone & Fairfax as he may be
advised."

After the expression of the court's opinion, and five days
before the entry of the final decree, Lizzie Lee Willey filed a
petition alleging that when her will was filed, she believed that
the litigation could be determined between the parties thereto.
It then proceeded as follows: "In view of the decision of
the justice as shown by his opinion, petitioner avers that, in
order to enable the court to adjust the proper mode and
measure of relief, she should now be permitted to make Stone
& Fairfax, which is a corporation, a party defendant to said
bill in equity No. 29, 785; that her failure to do so in the first
instance was not for the purpose of vexation or delay, but sole-
ly for the reason set forth in the third paragraph of this
petition, and that in view of said decision an amendment of

the bill in said cause, making said Stone & Fairfax, Incorporated, a party defendant, would enable the court to settle the rights of all concerned, and the matter of the proposed amendment is material.

"Petitioner further says that she tenders herself ready to submit to such term as may be imposed by the court for speeding the cause."

She prayed leave to amend her bill, making Stone & Fairfax parties. This petition was denied on August 29, 1910, and the final decree entered. From these decrees and orders this appeal has been prosecuted.

*Mr. Irving Williamson* for the appellants.

*Mr. J. H. Ralston, Mr. F. L. Siddons, Mr. William E. Richardson,* and *Mr. Stanley D. Willis* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The ground upon which this case was made to turn was that the corporation of Stone & Fairfax was a necessary party to the suit.

The record shows no plea or suggestion on the part of either Stormont or Washington that the said corporation was a necessary party. When the court announced its opinion to that effect, before the entry of the decree, Lizzie Lee Willey prayed leave to amend her bill by making it a party. Leave was denied and the decree entered. Error has been assigned to the decree that Stone & Fairfax is an indispensable party, and to the denial of the leave to amend by making it a party. Before considering those questions, it is important to consider the nature of the case presented by the pleadings as well as the facts established by the evidence. The bill of Stormont is not for specific performance of the contract of sale of the premises 1403 Delafield place; it charges a sale completed by the execution and delivery of a deed, and seeks to vacate the deed made

by George R. A. Willey to Lizzie Lee Willey, later in date, but earlier of record, as a cloud upon his title. The bill of Lizzie Lee Willey, alleging that the deed to Stormont and the deed to Washington were executed through fraud and mistake, and had not been delivered by the grantor, and that they had been recorded without authority, seeks to vacate the same and restore all parties to their original position. The answer of George R. A. Willey to the Stormont bill alleges the execution of the two deeds through fraud and mistake, and denies the completion of the transactions and the delivery of the deeds. The evidence establishes the following facts:

(1) George R. A. Willey was the owner of 1403 Delafield place, and lived thereon with his sister, Lizzie Lee Willey.

(2) Lizzie Lee Willey advanced $504.75 towards the purchase of the said property, with the agreement and understanding that she should have an interest therein to that extent.

(3) The property cost $6,500, and at the time of the alleged conveyance to Stormont was worth, according to the allegation in the latter's bill, $7,000, and according to the evidence about $6,750.

(4) Stone & Fairfax, Incorporated, was a real estate broker and agent. As such it had been rental agents for other property owned by the Willeys.

(5) Stone & Fairfax undertook to effect an exchange of property between Stormont and Willey, and acted as the agent of both parties, expecting a commission from each. Stormont paid the corporation for effecting a disposition of his property 308 R St. N. E., and knew that it was claiming to act as agent for Willey in the same transaction. It did not inform Willey of its agency for Stormont, and he had no knowlerge of the fact.

(6) R. L. Hall, an employee of Stone & Fairfax, conducted the negotiations with Willey, and in part with Stormont.

(7) At the time of signing the contract of sale with Stormont, neither Stone & Fairfax, nor Hall, had any written authority from Willey to enter into the same, though he had, in writing, constituted it his agents to sell.

(8) After informing Willey that the agreement with Stormont included the conveyance to him by Willey of 308 R St. N. E., Hall procured Willey's signature to the approval of that sale, shown in the paper, dated September 15, 1910, set out in the answer of Willey.

(9) Prior to that time, Hall had made a memorandum for Willey, giving figures showing that he would realize from the sale of the equity in 308 R St. N. E., the sum of $2,350 net. The figures as shown on the memorandum produced are as follows:

$3,500.00
 1,400.00 Trust.
_____

$2,350.00 Equity in No. 308 R St. N. E.

When Willey signed said paper of September 15, 1910, he did it under the representation of Hall that he would not have to take the property, but that the equity in it would be sold for $2,500. He so understood the instrument. Hall testified as follows to what occurred: "I told Mr. Willey that Stone & Fairfax had to sell 308 R St. at $2,500 net to him in a period of thirty days; that he did not have to take the R St. house, if he did not want it. That is what I told Mr. Willey, and then he signed. He wanted the money out of the R St. house, instead of the house."

(10) At the same time Willey executed the paper constituting Stone & Fairfax his exclusive agents for the sale of 1403 Delafield place for $6,000, less a commission of 3 per cent.

(11) Willey's evidence that he executed the deeds at Stone & Fairfax's office without reading them is entitled to no weight; he had the opportunity to do so. But had he done so, he would have derived no knowledge that they were not in accord with his understanding. The deed to Washington was a special warranty,—called a "code deed,"—and recited the nominal consideration of $10. It contained no recital informing him that it was not in execution of the paper of September 15, and the understanding then had of the price he was to receive. He was not shown the contract entered into with Washington, and no

statement was made to him of the actual terms. The statement of the account actually made to him later showed that, instead of about $2,350, he was actually to receive about $640. The contract which should have been shown him recited a sale for $2,660, of which $1,400 was in the assumption by the purchaser of the mortgage on the property, and the $1,260 in cash. The excess of $160 was intended to be appropriated by Stone & Fairfax, under their understanding that they were authorized to sell the property for $2,500 net, and not the equity merely. Willey was never informed of this excess.

(12) Willey executed the deeds expecting the final settlement to be made in accordance with his agreement, and left them with Stone & Fairfax with that understanding. He did not deliver the deeds to Stormont or Washington; nor did he direct their delivery or recording by Stone & Fairfax. He was not informed that Stone & Fairfax were also agents for either Stormont or Washington, and the deeds were not delivered to it as such.

(13) The deed to Washington had been sent to the agents of Washington by Stone & Fairfax, and was returned to Stone & Fairfax on notice that another deed had been placed on record, and Stone & Fairfax did not know how it might affect this transaction.

(14) While the deeds were still in the possession of Stone & Fairfax, Willey retained an attorney who went to the office of Stone & Fairfax, and notified them not to deliver either deed, or to close the transaction. Stormont was present and heard what occurred. Stone & Fairfax proceeded to close the transactions, and sent the deeds for record. In the meantime Willey had, by the advice of his attorney, conveyed the Delafield place property to his sister.

(15) Willey was then, and he and his sister have remained, in possession of 1403 Delafield place. Stormont was then, and has remained, in possession of 308 R St. N. E., but is renting from Washington.

(16) The funds received in the transactions remained in the hands of Stone & Fairfax. This was subject to its claims for

commissions. These seem to have been deducted from the gross amount before the delivery of the balance to the receivers.

Founded on the foregoing facts we are of the opinion that Stone & Fairfax exceeded its authority in entering into the contracts of sale with Stormont and Washington. The approval of the contract with Stormont was upon the condition that the equitable title conveyed by him should be sold within thirty days for $2,500. Whether Stormont had actual knowledge of this condition is immaterial. Stone & Fairfax was his agent to effect the transfer, and he is charged with the knowledge which it and its managing agents had in the course of the transaction. Moreover, he had actual konwledge while the deed was still in the possession of Stone & Fairfax, undelivered. There was no legal delivery of the deeds to either Stormont or Washington, and they acquired no title by the record made through the action of Stone & Fairfax. Stormont is not entitled to relief under the allegations of his bill. No title having passed out of Willey by the conveyance to Stormont, Lizzie Lee Willey acquired the title under her conveyance from him, and is entitled to be quieted in her possession. Stormont is entitled to be quieted in his title and possession to 308 R St. N. E. Lizzie Lee Willey and her grantor, having received no part of the money paid by either Stormont or Wahington, have no return to make to them in order to obtain a decree restoring all parties to their former positions.

This brings us to the consideration whether Stone & Fairfax is a necessary party to this proceeding in order that a complete disposition of the rights of all of the parties can be made in the final decree.

If the necessity to make Stone & Fairfax a party depended upon any interest of it in the subject-matter of the suit, we would not hesitate to say that it would not, at least when not suggested at a reasonable stage of the proceedings. Passing without comment the question of its acting as agent of both buyer and seller, expecting to receive a commission from each for effecting a sale, it is sufficient to say that it did not become entitled thereto on a transaction not completed, under the

contract therefor, whatever may be its right to recover for
services actually performed, in an action against any of the
parties on such a demand. The question, however, does not
depend upon these considerations alone. Both parties sought
relief in equity, which they were entitled to do, as the remedy
at law for the situation presented would not be adequate. In
addition, they consented to an interlocutory decree appointing
receivers for the property, and empowering them to receive
from Stone & Fairfax all of the funds in their hands derived
from the transaction. In addition, they were empowered to
receive rent of the property, and to renew mortgages. For
this purpose and to pay taxes and for necessary repairs they
were empowered to use the fund, holding the balance subject
to the final decree. This order was proper enough for the pro-
tection of all concerned. But it does not appear that Stone &
Fairfax delivered any of the money claimed by them as com-
missions. It seems, though the record is not clear on the
point, that they only delivered the balance after deducting
their commissions and probably some other charges and ex-
penses paid in arranging the transactions.

Under these circumstances the final decree ordering payment
of the funds to the parties entitled thereto could not dispose
of such of the fund as may have been retained by Stone &
Fairfax. To do this it must be made a party. When so
made the final decree could be so molded as to settle every
matter involved. In this view the court was right; but we
are of the opinion that it should have suspended the hearing
and directed that it be made a party defendant. This would
have entailed delay, especially if the new party should de-
mand, as it would have the right to do, time to take testimony
on the issues in which it is involved.

Ordinarily, the matter of amendment of pleadings in equity,
at the time of the hearing, is one of discretion, the exercise
of which will not be disturbed without very strong reasons
therefor. At the same time it is not unusual to permit an
amendment after the cause shall have been taken to an appel-
late court. Owing to the principle of equity that a cause shall

not be finally disposed of without having all parties whose interests might be affected before the court, leave to amend by making new parties is more liberally granted, especially where the necessity therefor has not been suggested, and does not become manifest, before the hearing. We are of the opinion, therefor, that the leave to amend should have been granted in this case when applied for.

The decree will be reversed, and the cause remanded with direction to grant the leave to make Stone & Fairfax a party, and for further hearing and a final decree not inconsistent with this opinion, making a disposition of the fund in the possession of the receivers, as well as that which may have remained in the possession of Stone & Fairfax. The costs in this court will be taxed one half against George R. A. Willey and Lizzie Lee Willey on the one side, and George T. Stormont and Richard Washington on the other. It is so ordered.

*Reversed.*